UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LACY C.,[1]

                                                               Plaintiff,            Case # 24-CV-6023-FPG

v.                                                                                               DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                               Defendant.
_____

## INTRODUCTION

Plaintiff Lacy C. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 11. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In January 2021, Plaintiff applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 59. She alleged disability since February 2020 due to severe social anxiety and ADHD. *Id.* In January 2023, Administrative Law Judge Joshua Menard ("the ALJ") issued a decision finding that Plaintiff is not disabled. Tr. 10-20. In November 2023, the Appeals Council

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 3.

1

denied Plaintiff's request for review. Tr. 1-3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 2021,

her application date. Tr. 12. At step two, the ALJ found that Plaintiff suffered from severe mental impairments of anxiety and ADHD. *Id.* At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. *Id.*

Next, the ALJ determined that Plaintiff had the RFC to perform work at all exertional levels, but that she had several non-exertional limitations. Tr. 14. At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 19. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 19-20. The ALJ therefore found that Plaintiff was not disabled. Tr. 20.

## II. Analysis

Plaintiff has a history of ADHD and anxiety. *See, e.g.*, Tr. 353. During high school, Plaintiff had an IEP and received supportive services to accommodate her impairments. *See* Tr. 602, 608. After high school, Plaintiff enrolled at a local college, but she left due to severe stress and anxiety. *See* Tr. 37. At college, she had struggled with social interactions and isolated herself in her dorm room. *See* Tr. 51.

Plaintiff began treatment at Strong Memorial Hospital in January 2020. Tr. 323. In March 2020, Plaintiff reported that, while she was suffering from severe stress—particularly in light of the start of the COVID-19 pandemic—she was also "volunteering" at her mother's work and was contemplating returning to school, and she denied any concerns with her ADHD. Tr. 398, 399. During the early months of the pandemic, Plaintiff reported that her conditions were stable or improving, though it was unclear how much social distancing contributed to Plaintiff's state. *See, e.g.*, Tr. 340, 343, 362, 365, 385-86. By May 2021, Plaintiff had re-enrolled at a local college and was pursuing her associate's degree, reporting that her anxiety was stable. Tr. 334, 530; *see also* Tr. 435 (stating that social interactions were improving and that overwhelming interactions

4

happened only "once in a while"). Plaintiff reported reconnecting with her friends. Tr. 521. Plaintiff's condition largely remained stable through June 2022, with intermittent, situational "flare-ups" of anxiety. *See, e.g.*, Tr. 494, 510, 690, 701. Nevertheless, Plaintiff maintained that her anxious symptoms, including "nervous thoughts, difficulty concentrating, racing heart and feeling tense, difficulty interacting with others when anxious," prevented her from working. Tr. 677.

There are five medical opinions in the record. In February 2021, Morgan O'Donnell—Plaintiff's licensed mental-health counselor—completed a medical source statement. Tr. 323. She opined that, due to her ADHD and anxiety, Plaintiff suffered from an extreme limitation in her ability to interact with others and a marked limitation in her ability to adapt and manage herself. Tr. 325.

In June 2021, Plaintiff met with psychiatric consultative examiner John Laurence Miller, Ph.D. Tr. 456. After a virtual "telehealth" evaluation, Dr. Miller opined that Plaintiff would be moderately limited in her abilities to interact adequately with supervisors, coworkers, and the public, sustain concentration and perform a task at a consistent pace, regulate emotions, control behavior, and maintain well-being. Tr. 459. Dr. Miller identified no other limitations. *Id.*

Also in June 2021, state-agency consultant S. Bhutwala, Ph.D., completed an assessment of Plaintiff's records. Tr. 70. Bhutwala concluded that Plaintiff was mildly limited in her ability to understand, remember, or apply information; moderately limited in her ability to interact with others; moderately limited in her concentration, persistence, and pace; and moderately limited in her ability to adapt and manage herself. Tr. 63.

In August 2021, state-agency consultant K. Lieber-Diaz, Psy.D., completed an assessment on reconsideration. Tr. 87. Departing from Bhutwala in part, Lieber-Diaz opined that Plaintiff was moderately limited in all four functional domains. Tr. 80.

In September 2022, treating therapist Anastasia Martin diagnosed Plaintiff with ADHD and social anxiety disorder. Tr. 619. Martin indicated that Plaintiff had marked limitations in her ability to interact with others, Tr. 621, and that Plaintiff would have significant difficulties managing work-related stress, Tr. 620.

The ALJ found Dr. Lieber-Diaz's opinion "most persuasive." Tr. 17. He concluded that, while "[t]he evidence shows [Plaintiff] has anxiety and ADHD, . . . the treatment records reveal she [is] doing well on medication and with counseling." *Id.* The ALJ found that Plaintiff was, at most, moderately limited in the four functional domains, Tr. 13-14, and that her impairments could be adequately accommodated by limiting her to simple, routine tasks, no more than occasional interaction with others, and simple changes in work setting, Tr. 14.

Plaintiff identifies a number of alleged errors with the ALJ's decision and reasoning, which the Court addresses below.

### a. Step-Three Discussion

Plaintiff first argues that the ALJ failed to provide a sufficiently robust discussion at step three, including by failing to sufficiently discuss the opinions of Martin and O'Donnell, and by writing a "boilerplate" explanation regarding the "paragraph C finding." ECF No. 8-1 at 15. This formal objection to the ALJ's decision does not merit remand. The Second Circuit has long held that a reviewing court may "look to other portions of the ALJ's decision" to discern the step-three rationale. *See Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) (acknowledging the absence of a "specific rationale" at step three but upholding the decision because "portions of the ALJ's

decision and the evidence before him indicate that his conclusion was supported by substantial evidence"). It is only where a court is "unable to fathom the ALJ's rationale in relation to evidence in the record" that an application should be remanded "for further findings or a clearer explanation for the decision." *Id.* at 469. In this case, the ALJ thoroughly discussed his evaluation of the record evidence elsewhere in his decision, including the opinions of Martin and O'Donnell. *See* Tr. 14-19. From that discussion, the Court can reasonably infer his findings and conclusions at step three, including that Plaintiff did not meet the relevant Listings. Remand is not warranted merely on the basis that the ALJ should have better explained his reasoning under the step three section.

### b. Martin's and O'Donnell's Opinions

Plaintiff argues that the ALJ did not properly evaluate the opinions of Martin and O'Donnell. *See* ECF No. 8-1 at 16. Specifically, she argues that the ALJ did not adequately analyze, or sufficiently substantiate his conclusions regarding, the supportability and consistency factors. The Court disagrees.

20 C.F.R. § 416.920c identifies several factors that an ALJ will consider when evaluating medical opinions, the most important of which are "supportability" and "consistency." 20 C.F.R. § 416.920c(b)(2). The former pertains to the degree to which the medical source supports her opinion with "objective medical evidence and supporting explanations," while the latter pertains to the degree to which the opinion is consistent with "the evidence from other medical sources and nonmedical sources" in the record. *Id.* § 416.920c(c)(1), (2). An ALJ's failure to explain the supportability and consistency of a medical opinion in his decision constitutes a procedural error. *See id.* § 404.1520c(b)(2); *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022).

However, if a searching review of the record assures the court that "the substance of the regulation was not traversed," a court may affirm the Commissioner's decision despite the error. *Loucks*, 2022 WL 2189293, at *2. Thus, even if an ALJ fails to explicitly evaluate the consistency and supportability factors with respect to a particular medical opinion, remand is warranted only if the reviewing court is "unable to fathom the ALJ's rationale in relation to [the] evidence in the record." *Berry*, 675 F.2d at 469. By contrast, if the reviewing court can "adequately 'glean' how the ALJ [implicitly] weighed the consistency and supportability factors," remand is not justified because the procedural error is considered harmless. *Davidia B. v. Comm'r of Soc. Sec.*, No. 21-CV-384, 2023 WL 5361000, at *5 (W.D.N.Y. Aug. 22, 2023).

In this case, the ALJ expressly considered the supportability and consistency factors. *See* Tr. 18-19. With respect to O'Donnell's conclusions that Plaintiff was extremely limited in her ability to interact with others, and markedly limited in her ability to adapt and manage herself, *see* Tr. 325, the ALJ found that the treatment notes did not support such significant limitations, Tr. 18. As to social interactions, he noted that Plaintiff reported "going to lunch with a friend and enjoying it" and that she was "doing well with her Zoom class." *Id.* As to adaptation concerns, the ALJ observed that Plaintiff was able to "complete online college classes and successfully obtain a degree" despite her impairments. *Id.* Furthermore, progress notes showed "generally unremarkable mental status examinations." *Id.* The ALJ noted similar findings with respect to Martin's opinion. *See* Tr. 18-19.

Delving into these considerations, Plaintiff criticizes the ALJ's view that she was able to interact with others successfully, noting that there was little evidence suggesting that Plaintiff could independently interact with others outside the home. *See* ECF No. 8-1 at 19. In fairness to Plaintiff, her position does find substantial support in the record. There is evidence that Plaintiff

8

cannot interview for jobs without "freezing up," *see* Tr. 40; that she "flunked out" of college because she "couldn't come out of her [dorm] room" due to social anxiety, Tr. 51; and that her social anxiety "progressively got[] worse since starting college and liv[ing] outside the home," Tr. 333. During her appointments, Plaintiff sometimes displayed abnormal behaviors for purposes of her mental status examinations, like "avoidant" eye contact. Tr. 625; *see also* ECF No. 8-1 at 17-18 (citing abnormal clinical findings).

Nevertheless, as the ALJ discussed, there was sufficient evidence to support the contrary inference. Plaintiff was able to succeed in her online college course conducted by live video, Tr. 337, and she reported making efforts to attempt social interactions "while out of the house," finding them too overwhelming only "once in a while." Tr. 340. Plaintiff reported an ability to be in public places and interact with others, though she found it "hard to interact with those [she is] unfamiliar with." Tr. 275. Her mental status examinations routinely showed normal findings. *See, e.g.*, Tr. 394, 457-58, 625, 636, 663, 670, 675, 678, 680. Three medical sources found Plaintiff's social limitations mild to moderate.[3]

At most, then, Plaintiff has identified a factual conflict in the record—the degree to which she could interact with others as a result of her social anxiety. Where, as here, an ALJ's findings are reasonably supported by the record, they "must be given conclusive effect" even if, as Plaintiff shows, "the administrative record may also adequately support contrary findings on particular issues." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Consequently, the mere fact that Plaintiff can identify other evidence to support a different assessment of the supportability and

---

[3] Moreover, much of the time period under consideration was during the early months of the COVID-19 pandemic, when Plaintiff was not able to be in "social situations to assess" the severity of her social anxiety. Tr. 332. Particularly given that context, Plaintiff's observation that the record discloses few "in-person interaction[s]" does not compel a finding that Plaintiff lacks any meaningful ability to interact socially. ECF No. 8-1 at 17; *see also id.* at 19.

9

consistency factors does not entitle her to relief. *Emery S. v. Comm'r of Soc. Sec.*, No. 20-CV-662, 2021 WL 2592363, at *4 (W.D.N.Y. June 24, 2021). Remand is not warranted.[4]

### c. School and Vocational Records

The record contains one exhibit, labelled "7F," that contains various school records, including a 2017 IEP and a 2017 psychological evaluation. *See* Tr. 587-618. Plaintiff asserts that the ALJ erred by not discussing these records, "which show Plaintiff required education in a special school with substantial supports and services." ECF No. 8-1 at 21. But the Second Circuit has held that "an ALJ is not required to discuss every piece of evidence submitted," and an "ALJ's failure to cite to specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). The ALJ chose to focus on Plaintiff's college records in connection with her benefits application. This was quite reasonable, as Plaintiff was in and out of college during the time period relevant to her benefits application. By contrast, Plaintiff's high-school records predated her alleged onset date by approximately 1.5 years, and her application date by approximately than 2.5 years. *See* Tr. 59; *see also Carway v. Colvin*, No. 13-CV-2431 (SAS), 2014 WL 1998238, at *5 (S.D.N.Y. May 14, 2014) ("[M]edical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability."). The ALJ's approach was particularly appropriate given that Plaintiff's benefits

---

[4] To the extent Plaintiff requests remand on the basis that the ALJ did not thoroughly discuss all of the evidence tending to support more restrictions, *see* ECF No. 8-1 at 21, the Court need only say that an ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quotation and citation omitted).

Separately, Plaintiff contends that the ALJ erred because Martin's opinion that Plaintiff was "seriously limited" in some mental aptitudes was consistent with the state-agency consultants' and consultative examiner's opinions. *See* ECF No. 8-1 at 29-30. This is incorrect. "Seriously limited" is equivalent to a marked limitation, 20 C.F.R. Pt 404, Subpt P, App'x 1, 12.00(F)(2), whereas the other medical sources identified moderate limitations.

application was premised on her deteriorating social anxiety *after* high school, *see* Tr. 51, and not on any intellectual or cognitive needs discussed in her high-school records.[5]

### d. Mental RFC

Plaintiff asserts that, even assuming the ALJ properly credited the less restrictive opinions over those of Martin and O'Donnell, the RFC he constructed does not accurately reflect those less restrictive opinions. *See* ECF No. 8-1 at 31-34. The Court is not convinced. The principal medical opinion on which the ALJ relied, Dr. Lieber-Diaz, found that Plaintiff would be (a) moderately limited in her ability to understand, remember, and carry out detailed instructions; (b) moderately limited in her abilities to interact with others, seek assistance, and work in coordination with or proximity to others; (c) moderately limited in her ability to respond appropriately to changes in work setting, and to set realistic goals or make plans independently of others. Tr. 8-85. Consistent with that opinion, the ALJ found that Plaintiff would be (a) limited to simple tasks; (b) limited to occasional interactions with others; and (c) limited to simple changes in work setting only.[6] Tr. 14. As Dr. Lieber-Diaz herself made clear, Plaintiff "would be capable of unskilled work in a setting that has limited contact with others." Tr. 87. The RFC encompasses such restrictions. *See* Tr. 14.

---

[5] It is worth noting that, while Plaintiff makes much of the academic supports that she needed during high school, *see* ECF No. 8-1 at 21-28, none of the medical opinions in the present record suggests a marked or extreme limitation in cognitive functioning. *See* Tr. 63, 80, 324-25, 459, 620-21. Likewise, Plaintiff's belief that she needs a "job coach" rests largely on her high-school records, ECF No. 8-1 at 34, which the ALJ could properly exclude in light of the more recent evidence and less restrictive medical opinions.

[6] The only limitation that is not expressly accounted for is Dr. Lieber-Diaz's moderate limitation on concentration. *See* Tr. 83. But, contrary to Plaintiff's argument, ECF No. 8-1 at 32-33, "[c]ourts in this [d]istrict routinely conclude that an ALJ's directive that plaintiff is limited to performing simple, routine tasks accommodates a medical professional's finding that plaintiff is moderately limited in concentration, persistence, and pace." *Hintsa N. v. Comm'r of Soc. Sec.*, No. 20-CV-6335, 2021 WL 3615704, at *2 (W.D.N.Y. Aug. 16, 2021) (internal quotation marks and brackets omitted).

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 3, 2025
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York